DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Steven Spohn, has requested a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its January 5, 2000 order wherein relator was ordered to appear at an examination with a physician of respondent Seaway Food Town, Inc.'s ("employer") choice. Additionally, relator has requested a writ of mandamus ordering the commission to vacate its September 12, 2000 order finding that relator was no longer permanently and totally disabled, terminating his permanent total disability ("PTD") compensation as of September 12, 2000, and finding an overpayment of PTD compensation from that date forward.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that the issue of whether the commission abused its discretion in its January 7, 2000 order compelling relator to submit to medical examinations is not properly before the court. Additionally, the magistrate found that relator has not demonstrated that the commission abused its discretion in determining that relator was no longer entitled to PTD compensation and in terminating his PTD compensation as of September 12, 2000. Therefore, the magistrate recommended that this court deny the requested writ of mandamus.
 {¶ 3} Relator sustained a work related injury on January 29, 1985, the date he last worked, and his claim was allowed for "low back strain; both legs; major depression, single episode." On March 13, 1988, relator applied for PTD compensation, and the application was granted on June 11, 1991. In 1993, relator's claim was additionally allowed for "herniated lumbar disc; lumbar spine adhesions."
 {¶ 4} In 1997, the employer hired a surveillance company and placed relator under surveillance. Relator was observed playing golf on numerous occasions. Based on the surveillance results, the employer attempted to cause relator to submit to a medical examination. Relator refused, and the matter was heard before a district hearing officer ("DHO"). The DHO ordered relator to appear for an examination. Relator did not appeal this order and appeared for subsequent examinations at the employer's request with Drs. Koltz and Kuna.
 {¶ 5} A hearing was held on the merits of whether or not relator's PTD compensation should be terminated, and the staff hearing officer ("SHO") determined that relator was no longer PTD, terminated relator's PTD benefits, and ordered an overpayment of PTD compensation paid from the date of the hearing forward.
 {¶ 6} Relator argues that the commission abused its discretion by ordering relator to submit to medical examinations and by terminating relator's PTD compensation and finding overpayments. The magistrate concluded that the commission did not abuse its discretion in either case.
 {¶ 7} Relator objects to the magistrate's findings of fact numbers 2, 3, 5, 6, 10, and 14. In his objections, relator argues that the magistrate's findings of fact are misleading and/or incomplete. However, we find that the record supports the magistrate's findings. Additionally, any error alleged by relator is not material to the merits or the outcome of this matter. Therefore, relator's objections to findings of fact numbers 2, 3, 5, 6, 10, and 14 are overruled.
 {¶ 8} In his objection to finding of fact number 8, relator contends that although the surveillance report states an allegation that relator played 95 rounds of golf in 1998, the report refers to other items, such as a master list and videotape of relator's activities, which were not filed in the claim. Therefore, it is relator's position that there is only a "scintilla" of evidence that exists as proof of the 95 rounds of golf. However, as argued by the employer, relator does not deny that these activities occurred, nor is there any allegation that relator made any request for this other evidence, or that any such request was denied. Therefore, relator's objection to finding of fact number 8 is overruled.
 {¶ 9} Relator objects to the magistrate's conclusions of law, arguing that the DHO lacked jurisdiction to order relator to appear for a medical examination, and, therefore, he had no duty to appeal a void ab initio order. Additionally, relator argues that the SHO failed to establish new and changed circumstances, and that the commission abused its discretion in failing to order additional medical examinations and additional vocational evidence. These arguments are simply a reiteration of the arguments made to the magistrate and addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, we find these arguments unpersuasive.
 {¶ 10} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Petree and McCormac, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Steven Spohn, :
 Relator, :
v. : No. 04AP-626
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Seaway Food Town, Inc., :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on January 31, 2005 Fell Marcus Co., L.P.A., and George N. Fell, II, for relator.
Jim Petro, Attorney General, and William J. McDonald, for respondent Industrial Commission of Ohio.
Law Offices of Michael P. Margelefsky, LLC, Michael P. Margelefsky andVincent S. Mezinko, for respondent Seaway Food Town, Inc.
In Mandamus.
 {¶ 11} Relator, Steven Spohn, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its January 5, 2000 order wherein relator was ordered to appear at an examination with a physician of the respondent Seaway Food Town, Inc.'s ("employer") choice, as well as the commission's September 12, 2000, order finding that relator was no longer permanently and totally disabled and terminating his permanent total disability ("PTD") compensation as of September 12, 2000, finding an overpayment of PTD compensation from that date forward.
Findings of Fact:
 {¶ 12} 1. Relator sustained a work-related injury on January 29, 1985, and his claim was originally allowed for "[l]ow back strain; both legs; major depression, single episode."
 {¶ 13} 2. Relator had three surgeries for his back condition in 1978, 1979, and 1981.
 {¶ 14} 3. In 1988, relator participated in a rehabilitation program and completed one semester of computer programming at Owens Community College.
 {¶ 15} 4. On March 13, 1988, relator filed an application for PTD compensation. Relator last worked on January 29, 1985. Relator's application for PTD compensation was supported by the medical reports of William Seman, Ph.D., and Dr. Gerald Steiman.
 {¶ 16} 5. Relator was evaluated at the J. Leonard Camera Center in August 1990 to determine the permanency of his disability and his future for rehabilitation. It was concluded that relator was a poor candidate for participation in a chronic pain and stress management program, noted that relator was not interested in rehabilitation services, and 15 potential occupations were identified in the event that relator changed his attitude. Relator's rehabilitation file was closed in 1991.
 {¶ 17} 6. Relator's application for PTD compensation was granted by order dated June 11, 1991. The commission concluded that relator was limited to very sedentary work with severe restrictions on bending, lifting, and twisting. After an examination of the vocational factors, compensation was granted.
 {¶ 18} 7. In 1993, relator's claim was additionally allowed for "herniated lumbar disc; lumbar spinal adhesions."
 {¶ 19} 8. Sometime in 1997, the employer hired a surveillance company and placed relator under surveillance. The main activity which relator was observed performing, which is pertinent to the within action, was golf. Pursuant to the report generated following the surveillance, relator played 95 rounds of golf at the White Ford Valley Golf Club in 1998.
 {¶ 20} 9. Based upon the surveillance results, the employer attempted to cause relator to submit to medical examinations under R.C. 4123.651. Relator refused.
 {¶ 21} 10. The matter was heard before a district hearing officer ("DHO") on January 5, 2000. At that time, the DHO informed the employer that it had no right to cause relator to submit to an automatic examination under R.C. 4123.651. However, the DHO granted the employer's oral request for an examination and ordered relator to appear for an examination with a physician of the employer's choosing. Relator was informed that his failure to appeal would result in suspension of his benefits under R.C. 4123.651(C).
 {¶ 22} 11. Relator did not appeal this order and did appear for subsequent examinations at the employer's request with Drs. Michael Koltz and Daniel Kuna.
 {¶ 23} 12. In his February 14, 2000 report, Dr. Koltz noted his physical findings and then noted as follows in the discussion portion of his report:
This is [a] very fascinating and yet complex case. As of the time of this examination, Mr. Spohn is clearly fixated on the stressors of his life. With regard to the conditions allowed in this claim, Mr. Spohn has satisfactory [sic] recovered to the point where he is functional and for this reason, I believe that he is not permanently and totally disabled. It is fascinating to note that when Mr. Spohn is distracted from his complaints of back and leg pains, he moves about freely in a very nonguarded, painless posture. It is further fascinating to note that the Infoquest surveillance report demonstrates that Mr. Spohn is very functional and he did not appear to have any problems walking or swinging a golf club. He moves about freely, bending at the waist, picking up golf balls, tees and so forth. The mid-back and low back biomechanics of golf require a significant rotation and flexion of the back. It is clear that Mr. Spohn is able to perform these functions nicely. This was also further demonstrated in my medical examination today. For this reason I clearly believe that Mr. Spohn has a very good functional range of motion of the back and is [sic] clearly has no permanent total disability.
(Emphasis sic.)
 {¶ 24} 13. On February 16, 2000, Dr. Kuna examined relator for his allowed psychological condition. Dr. Kuna concluded that relator's underlying personality disorder, which is not related to his industrial injury and is not work-prohibitive, has a poor prognosis for improvement. However, he noted that relator's major depression is in good remission and has been since 1996, and further noted that PTD compensation is not warranted based upon the allowed psychological condition.
 {¶ 25} 14. Relator did not submit any additional medical evidence himself.
 {¶ 26} 15. A hearing was held on the merits of whether or not relator's PTD compensation should be terminated and the matter was heard before a staff hearing officer ("SHO") on September 12, 2000. The SHO concluded that the commission had jurisdiction to address the issue of relator's continued entitlement to PTD compensation for the following reasons:
First, as a result of changes in the medical field since claimant's injury, new treatments have been provided to the claimant which have significantly improved his physical condition, particularly the epidural injections the claimant has received and will probably continue to need into the future.
Second, certain activities the claimant is currently performing were brought to the employer's attention. These activities could be considered activity inconsistent with his permanent and total disability status. Therefore, pursuant to O.R.C. 4123.52 and State ex rel. Smothers v. Mihm
(1994), 69 Ohio St.3d 566, the Staff Hearing Officer finds there is jurisdiction at the Industrial Commission to reconsider the claimant's eligibility for permanent total disability benefits and/or termination of same.
 {¶ 27} The SHO then noted that this was a very complex case and that it was difficult to decide. However, the SHO concluded that the preponderance of the evidence indicated that relator was no longer permanently and totally disabled as a result of the allowed condition, terminated relator's PTD benefits effective the day of the hearing, and ordered an overpayment of PTD compensation paid from the date of the hearing forward. With regard to relator's physical condition, the SHO noted the following:
The Staff Hearing Officer finds as a result of the surgery in 1996 to remove scar tissue around the claimant's spine and ongoing epidural injections, the claimant has physically improved to the point of having the physical ability to perform at least sedentary sustained remunerative employment.
This finding is supported by the medical findings of Dr. Koltz in his report of 2/14/00, the surveillance evidence of claimant's golfing activities at least three times per week, and the medical records of pain management, the epidural injections, histories given and treatment results from 7/1/96 through 10/28/97 from Toledo Hospital.
 {¶ 28} The SHO also concluded that relator's allowed psychological condition permitted him to perform at least sedentary sustained remunerative employment. Thereafter, the SHO then addressed the vocational factors as follows:
The Staff Hearing Officer finds the evidence on file and testimony at hearing shows the claimant has a home computer. The claimant had computer training at Owens Technical College in 1988. The claimant testified at hearing, that he uses his home computer to access internet sites, particularly for video games and sweepstakes.
* * *
The Staff Hearing Officer finds the claimant's vocational factors would also not preclude the claimant from performing sustained remunerative employment. The claimant is currently only 44 years old, which is a younger individual by definition in OAC 4121-3-34. The claimant is a high school graduate with additional college training in computers. The claimant has demonstrated computer skills in his activities of daily living. The claimant is clearly able to read, write and perform basic math, again established by his activities of daily living. There is no evidence of any learning disability which would preclude the claimant from re-training into areas of entry level sedentary work. These are allpositive vocational factors.
Therefore, as a result of solely the allowed conditions in this claim, the 2/14/00 report of Dr. Koltz, the 2/16/00 report of Dr. Kuna, the evidence of physical and psychological activity on file (golfing, computer usage, and record keeping of bird sightings), the Staff Hearing Officer finds the claimant is no longer permanently totally disabled nor precluded from performing sustained remunerative employment.
(Emphasis sic.)
 {¶ 29} 16. Relator appealed the SHO decision and attached an affidavit explaining that playing golf was not contraindicated by his allowed conditions, explained that playing golf did cause his legs and low back area to ache, and that his back condition has not improved since 1996. Relator also attached statements from Mary Jo Christ, one of which attempted to memorialize her testimony at the hearing, and the other set forth her observations of relator's disabling conditions which she was unable to present at the hearing because of time limitations.
 {¶ 30} 17. Relator's request for reconsideration was denied by order of the commission mailed November 24, 2000.
 {¶ 31} 18. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 32} Relator raises two issues in this mandamus action: (1) whether the commission abused its discretion by ordering relator to submit to medical examinations in its January 7, 2000 order; and (2) whether the commission abused its discretion in terminating relator's TTD compensation as of the date of the September 12, 2000 hearing and finding any payments made after that date were an overpayment. For the reasons that follow, this magistrate finds that the commission did not abuse its discretion in either case.
 {¶ 33} With regard to the first issue, whether the commission abused its discretion by ordering relator to submit to physical examination in its order dated January 7, 2000, this magistrate notes first that relator failed to appeal from the DHO order of January 7, 2000 and, as such, relator has failed to exhaust his administrative remedy. In order to be entitled to a writ of mandamus, relator must establish that he has a clear legal right to the relief prayed for, that the commission is under a clear legal duty to perform the act requested, and that relator has no plain and adequate remedy in the ordinary course of the law. State exrel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 34} By failing to appeal the January 7, 2000 DHO order, relator failed to exhaust his administrative remedy. As such, he has waived his right to challenge that order by way of mandamus. See State ex rel.Leyendecker v. Duro Test Corp. (1999), 87 Ohio St.3d 237, and State exrel. Buckley v. Indus. Comm., Franklin App. No. 02AP-498, 2003-Ohio-667.
 {¶ 35} Relator argues, however, that the DHO did not have authority to refer him for a medical examination when the issue was whether or not he was entitled to receive further PTD compensation. Relator contends that Ohio Adm. Code 4121-3-34 vests an SHO with the authority to adjudicate that issue. As such, relator contends that the DHO order was void ab initio and that the reason he did not appeal it was so that the issue would not be properly brought before an SHO. Furthermore, relator contends that, inasmuch as the DHO order indicated that continued PTD compensation would be terminated in the event that relator failed to appear for the medical examinations, he subsequently appeared for those examinations, even though not ordered to do so by a valid order. Relator asserts that the DHO's order was void and therefore, he was not required to pursue an administrative appeal. Further, relator asserts that the reports generated by Drs. Koltz and Kuna cannot constitute "some evidence" since his attendance was procured by a void order. For those reasons, relator contends that he was not required to take any action and that this court does have authority to address this issue.
 {¶ 36} First, although relator is correct in asserting that a DHO does not have the authority to refer him for a medical examination when the issue being raised is continued entitlement to PTD compensation, relator submitted to those medical examinations anyway. As such, this magistrate finds that the issue is moot and not properly before this court. If relator would not have attended those medical examinations, and if the commission thereafter terminated his PTD compensation, relator could have challenged the commission's authority. However, inasmuch as relator attended the exams and did not avail himself of any administrative remedies, this magistrate finds that relator's first issue, whether the commission abused its discretion in its January 7, 2000 order ordering him to submit to medical examinations, is not properly before this court. Therefore, relator's first argument fails.
 {¶ 37} In his second argument, relator contends that the commission's order of September 12, 2000 constitutes an abuse of discretion. Relator contends that: the commission failed to find new and changed circumstances as required by State ex rel. Smothers v. Mihm (1994),69 Ohio St.3d 566; the commission did not apply Smothers properly; the commission should have ordered additional medical examinations and vocational evidence; the September 5, 2000 report of Dr. Lurley J. Archambeau did not constitute some evidence; and that the reports of Drs. Kuna and Koltz are fatally flawed and do not constitute to "some evidence" in support of the commission's order. For the following reasons, this magistrate disagrees.
 {¶ 38} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 39} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 40} As indicated in the findings of fact, relator had already been found to be permanently and totally disabled. Once this determination has been made, "the employee shall receive an award to continue until hisdeath." (Emphasis added.) R.C. 4123.58(A). The purpose of PTD compensation is to compensate a claimant for an impairment of earning capacity and that issue addresses the claimant's ability to work. Further, in Smothers, at 567-568, the court noted the lifetime nature of a PTD award and then gave the following example of a new and changed circumstance that would justify a later review of a PTD award:
The character of a permanent total disability award does not, however, mean that the award is completely immune from later review. If, for example, the commission learns that the claimant is working or engaging in activity inconsistent with his permanent total disability status, the commission can use its continuing jurisdiction under R.C. 4123.52 to reopen the matter. Similarly, if new medical technology reversed a claimant's allowed condition, reconsideration of his or her award may be appropriate.
 {¶ 41} Relator argues that the commission failed to find new and changed circumstances as required by Smothers. Relator asserts thatSmothers requires a reversal in his allowed condition. This magistrate disagrees. Specifically, the commission noted that changes in the medical field and new treatments have been provided to relator which have significantly improved his physical condition. Second, the commission noted that relator was currently performing certain activities which are inconsistent with his receipt of PTD compensation. Relator asserts that there was evidence in the record that he played golf at the time of the PTD award. However, while evidence was presented regarding the frequency at which he plays golf now, relator appears not to have provided any evidence that his current ability to play golf is the same as it was previously. Besides, the commission went on to note that, as a result of his 1996 surgery, relator has physically improved to the point of having the physical ability to perform at least sedentary work. Dr. Black's notes indicate that the current epidural injections have been very successful. As such, contrary to relator's arguments, the commission did find new and changed circumstances to vest it with jurisdiction to address relator's continued entitlement to PTD compensation.
 {¶ 42} Relator next contends that the commission applied an incorrect standard. Specifically, relator contends that the commission found that his condition had improved but that Smothers requires that new technology actually reverse the allowed condition. Relator is correct in asserting that the quoted language from Smothers indicates that jurisdiction to reopen a case exists where new medical technology reverses a claimant's allowed condition. However, this is simply one example of a situation wherein the commission can properly exercise continuing jurisdiction and reopen the case to determine whether or not the claimant is still entitled to PTD compensation. As stated previously, the purpose of PTD compensation is to compensate a claimant for an impairment of earning capacity. That issue addresses the claimant's ability to work. As such, where there is evidence that a recipient of PTD compensation is no longer unable to perform sustained remunerative employment due to the allowed conditions in the claim, then the commission has continuing jurisdiction to reopen the matter and determine whether or not that person is entitled to continue to receive PTD compensation. Just because Smothers indicated a hypothetical situation, where one's medical condition was reversed, does not mean that that is the only situation where the commission can exercise its continuing jurisdiction. In this situation, the employer had evidence, by way of surveillance, that relator was performing physical activities which were inconsistent with his inability to perform at least sedentary work. Because of that, the employer sought to have relator examined by another physician. This is not, as relator asserts, an example of an employer who simply does not want to pay the compensation and, for no valid reason, seeks to have a claimant reexamined years after the claimant has been found entitled to PTD compensation. Before the commission can exercise its continuing jurisdiction, some evidence must be brought to the commission to justify the reopening. That evidence was present in this case and relator's argument fails.
 {¶ 43} Relator also contends that the commission abused its discretion by failing to order additional medical examinations and additional vocational evidence to ensure that relator's issue was addressed fairly. However, the magistrate notes that relator could have presented additional medical evidence at the hearing to terminate his PTD compensation; however, for whatever reason, he chose not to. Relator and his girlfriend did appear at the hearing and both of them testified; however, it was not incumbent upon the commission to seek out additional medical evidence and relator's reference to Ohio Adm. Code 4121-3-34 does not necessarily apply in this instance. Relator argues that the commission was required, pursuant to R.C. 4121-3-34(C)(5)(a)(iii) to schedule appropriate medical examinations by physicians selected by the commission and, pursuant to Ohio Adm. Code 4121-3-34(C)(6)(c), refer the claim file documents to a vocational expert selected by the commission. These requirements apply when an application for PTD compensation has been filed and do not place responsibility on the commission to undertake those actions when a motion has been filed by an employer seeking to terminate a claimant's PTD compensation.
 {¶ 44} Relator also argues that the commission abused its discretion by concluding that the September 5, 2000 report of his treating psychologist Dr. Archambeau did not constitute some evidence of relator's status as being totally disabled due to his psychiatric conditions. The magistrate finds that the commission did not make this finding. Instead, the commission specifically found that the reports of Dr. Archambeau were unpersuasive because his opinion included diagnoses and treatment for conditions which are not allowed in the claim. The commission then went on to note that Dr. Kuna also found some of these diagnoses, but that he specifically found that relator was not permanently and totally disabled due to the allowed conditions in the claim. The commission noted that other diagnoses cannot be used to either support or deny PTD compensation.
 {¶ 45} In his September 5, 2000 report, Dr. Archambeau noted that he had been treating relator since 1985 and that his working diagnoses include: "Major Depression, Anxiety Disorder with Panic Attacks, Chronic Depression, and Somatoform Pain Disorder. In addition, he has a Personality Disorder consistent with paranoid-type." Thereafter, Dr. Archambeau concluded his report as follows:
His complex mood disorder is filled with anxiety, depression and anger and complicated by his personality disorder. It is impossible for me to see him as a predictable, productive employee. I think that there probably is some element of malingering as he attempts to "show the enemy" that he has been injured and is incapable. All of these factors add up to an extremely difficult situation that I think prevents this man from ever being gainfully employed again. From a psychiatric standpoint, I think there is little reason to continue treatment other than to, perhaps, be influential in preventing explosiveness.
 {¶ 46} Based upon a review of his report, this magistrate finds that it was not an abuse of discretion for the commission to find, as it did, that Dr. Archambeau did not confine his opinion solely to the allowed psychological condition of major depression, single episode.
 {¶ 47} Next, relator contends that the reports of Drs. Kuna and Koltz do not constitute some evidence upon which the commission could rely. The fact that Dr. Kuna concluded that relator's problems were due to an underlying personality disorder which will not respond to psychotherapy or medications and that his depression is managed by previous and current medications does not render his report fatally flawed. Relator does not point to any inconsistency or ambiguity in his report; instead, relator simply states that his conclusion is wrong.
 {¶ 48} The record indicates that Dr. Kuna reviewed relator's prior medical history with regard to his psychological condition, discussed with relator his day-to-day activities, and examined relator from a psychological perspective. Based upon all of that, Dr. Kuna reached his conclusions. This magistrate does not find that his report is fatally flawed such that it should not constitute some evidence upon which the commission could rely.
 {¶ 49} Relator also challenges the commission's reliance upon the medical report of Dr. Koltz who examined relator for his allowed physical conditions. Relator begins by pointing out that Dr. Koltz only examined relator one time and points out that Dr. Koltz does not establish that relator's allowed physical conditions have reversed as is required by the United States Circuit Courts in Social Security Disability cases. Relator argues that the standard should be whether measurable, substantial, or material improvement or reversal of the allowed conditions has occurred; however, that is not the standard. Instead, as noted previously, the purpose of PTD benefits is to compensate a claimant for an impairment of earning capacity and it addresses the claimant's ability to work. In determining whether or not one's PTD compensation should be terminated, the commission looks at whether or not the claimant, due to changes in medical treatment or an improvement in his condition, has reached a point where he is no longer permanently and totally disabled. Obviously, the commission no longer believes that relator is limited to very sedentary work with severe restrictions in bending, lifting, or twisting as the commission found that relator was when PTD compensation was granted in 1991. Relator does not show any ambiguity or inconsistency in Dr. Koltz's reports; instead, he argues that Dr. Koltz did not make the requisite physical findings required for the commission to ultimately find that he was no longer entitled to compensation. Inasmuch as the commission is the one to determine the weight and credibility of the evidence, in the face of Dr. Koltz's report otherwise complying with law, it can constitute "some evidence" upon which the commission could rely and the commission did so in the present case.
 {¶ 50} Lastly, relator argues that the commission has deprived him of a property right to continued entitlement to PTD compensation without due process of law. In the present case, relator had the right to present his own evidence at the hearing and the right to argue the merits of his evidence at the hearing compared to the other evidence presented. Accordingly, there was no due process violation.
 {¶ 51} Based on the forgoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused it discretion in determining that he was no longer entitled to PTD compensation and in terminating his compensation as of September 12, 2000. As such, relator is not entitled to a writ of mandamus.